Meinders v. UnitedHealthcare. Good morning, Your Honor. My name is— Just one moment. Mr. Bach. Yes, good morning, Your Honors. My name is Philip Bach. I'm here on behalf of the plaintiff. Plaintiff filed this case after receiving an unsolicited advertisement by fax from the defendants. The defendants moved to compel arbitration. As the movement on that kind of argument, they had the burden of proving there was an agreement to arbitrate. So the defendants argued that plaintiff had entered into a provider agreement with them and that plaintiff signed a provider agreement with them, and they attached a provider agreement. And we looked at the provider agreement. It doesn't mention UnitedHealthcare. It's all about this other company, ACN Group, nothing about United. And so we said—so we filed a response arguing defendants had not provided any evidence supporting their entitlement to enforce the arbitration agreement. They said in a footnote that this ACN Group was owned by them somehow, but there's no evidence of that, and they didn't say how they were related other than owned. And so we also argued that they had provided no evidence of ownership. So they didn't prove they owned the company, and they didn't provide any legal basis to enforce an arbitration agreement based on that ownership. And we cited cases saying even if they do own this company, they still can't enforce the arbitration agreement. So they replied with a brand new theory saying—and with a new affidavit saying that they had assumed important obligations of this agreement, and therefore were entitled to enforce the arbitration agreement against plaintiff under a common law assumption theory. We then moved to strike the reply, arguing that it was improper to raise a whole new theory of assumption in a reply when their original argument was not assumption, but it was ownership. And those are two completely different, you know, piercing the veil, piercing your own corporate veil to enforce a contract is very different than somebody trying to hold you liable under an assumption. And in the alternative to the motion to strike and attached to it, we said, well, here's our reply—our reply arguing why they're wrong on assumption. And Judge Herndon, the district court, denied our motion to strike and struck our reply from the record and then considered and ruled upon their affidavit that was attached for the first time to the reply and ruled on the basis of this assumption that they had assumed the contract just because the affiant says they'd assumed important obligations. Mr. Bach, I'll tell you, both counsel, I'm troubled by the district court's handling of this issue and the way it was presented. I'm concerned, though, about the possibility that if we were to remand because of the way the issue was decided, that it would wind up being a useless gesture. Why isn't this a harmless error? What would you actually want to dispute about this assumption theory in the district court? Well, we would like to—we would—if they had—if their reply had been their opening motion, we would have responded by saying we want to depose the affiant. We want to know what—when she says they have assumed important obligations, what does she even mean? Is there a legal assumption? Is there a written contract, a promise to perform? They say in one of their briefs that their relationship, their ownership of this subsidiary predates this provider agreement, but the provider agreement doesn't mention UnitedHealthcare. That's strange. Why doesn't it? We would also like to know why they sent the facts. Does the facts have anything to do with the provider agreement? There's no evidence that they sent this facts to the plaintiff because of the provider agreement, because UnitedHealthcare is a huge company. They have all kinds of subsidiaries, and this guy's a doctor. The fact that they were able to find a subsidiary that has an arbitration agreement with him is sort of just bootstrapping this—this junk facts has nothing to do with, and there's no evidence that it has anything to do with the provider agreement. So we would like to get into that. There's also nothing in the record showing plaintiff accepted payments from them on behalf of the subsidiary. Presumably plaintiff accepted whatever payments were coming, right? Yeah, we just don't know did any come from them and were they for the subsidiary. Did you know, did you care, or did you agree to have the parent company take over the duties under the contract? Can I ask you a question also, Mr. Bach, about the contract here? This is in the red brief appendix, but it actually has some provisions about assignment and delegation, and at least the way these two documents seem to fit together, as I understand it, Supplemental Appendix 14, rights and responsibilities under the agreement cannot be sold, leased, assigned, or otherwise delegated by either party without the prior written informed consent of the other parties. Paragraph 13, is there any evidence of any such consent here? No, and there was no evidence either of any notification. It's just somebody who says she's the president of a company in Illinois says they assumed important obligations, and that's all we know. And I think these things would fit into an analysis of, is this an assumption of contract that can be binding on the plaintiff? And we didn't get a chance to get into the facts, but we also really didn't get a chance to argue the law. I mean, there's a lot of case law cited in the briefs, but they have not cited any case where a party, they haven't cited any case where an assuming party enforces an agreement to arbitrate against a non-assuming plaintiff. So the assuming party is bound by the contract, but they don't cite any cases where a party can assume a contract and then enforce an arbitration agreement against the other guy. So that's something we would have argued based on the evidence, but obviously didn't have an opportunity to do that. The theory that you were confronted with, in essence, is implied assumption. Yeah, I think so. Contrary to an apparent explicit provision in the contract. Right. Okay. We don't know if UnitedHealthcare has a contract with the subsidiary, and, you know, I'm not, I mean, frankly. If ACN had gone into bankruptcy and had stiffed your client on payments for services provided, would you have had a basis to pierce the corporate veil and sue United for it? Not that I know of. Well, they assumed important obligations. I don't think they would have given us that affidavit if we were suing them at the time. But how would we even know to sue them necessarily? One quick, one thing I wanted to ask you, Mr. Brock. Under the rules and contracts that are applicable here, if this claim is subject to arbitration, is it possible to arbitrate it as a class action or not? Yes. No prohibition on that? There's no prohibition in the contract. Want to reserve the rest of your time, Mr. Brock? I would like to, yes. Thank you. All right. Ms. Ellsworth. Thank you, Mr. Brock. Thank you. Good morning, Your Honors. Jessica Ellsworth for the United Defendants. There's a procedural issue and a merits issue in this case. I'd like to start with the procedural issue that Judge Hamilton was asking about. To the extent that there was any to the extent that what happened below is that Mr. Minders feels he did not get to respond to the reply brief, this Court's decision in Smith v. Bray, I think, makes clear that the answer to that is that he can present any of those arguments he wants to make to this Court, and this Court would not allow someone in my client's position to assert waiver. We have not asserted waiver. We agree that he is able to make any arguments here that he wants to make about the merits. This case is ultimately about a fax that Dr. Minders received because he is a United provider. United moved to compel arbitration because Dr. Minders has a provider agreement that enables him to provide care to United Insureds, and that provider agreement contains an arbitration clause. That arbitration clause compels arbitration in Minnesota, and so United moved to dismiss on the basis of improper venue based on that arbitration provision. United's motion to dismiss anticipated that Dr. Minders would argue that this fax did not fall within the scope of the provider agreement, and it structured its brief accordingly. Dr. Minders, in his opposition brief, raised questions about who ACN was, the United subsidiary who signed chiropractors into United health care plans, and Dr. Minders suggested that there needed to be more information about... Was that argument a surprise to you? It was a surprise. It was a surprise for a number of reasons. ACN is a United subsidiary, and when chiropractors or other specialists sign a provider agreement with ACN, their reason they do that is to become a United provider. They aren't signing this with any question about whether they're going to provide care to Cigna Insureds or Blue Cross Insureds. This is a United subsidiary that entitles them to access... Is United a party to the contract? Well, it depends which United entity you mean. Anything other than ACN? The defendant that was sued for sending the fax. The two defendants that were sued for sending the fax are not identified in the contract as parties to the contract. And to be clear, they're not identified anywhere on the face of the fax either. Neither is ACN. The face of the fax refers to United Healthcare Services, Inc., and it refers to a number of United healthcare entities from other states. You can see this at Supplemental Appendix 1. In the footer, it talks about insurance coverage provided by United Healthcare Insurance Company or affiliates, health plan coverage provided by a variety of United healthcare entities, and administrative services provided by United Healthcare Services, Inc. or affiliates. When the two defendants received this complaint, they took the common sense approach to responding, which is to say this is a fax that went to a United provider. This United provider has a provider agreement that enables him to provide services and get paid for them to United Insureds. So the defendants in ACN, none of them are identified on the face of the fax, but the fax does make clear that it was intended for United providers. And so that is why when United filed its motion to dismiss, it focused on the fact that there is a provider agreement. It's what enables Dr. Meinders to have access to United Insureds and resulted in this fax being sent to him. When this issue became clearer at the opposition stage, United then responded by submitting a three-page reply that identified the exceptional circumstances as required by the appropriate local rule and included an affidavit that walked through in direct response to Dr. Meinders' opposition the corporate structure, who exactly owned ACN, and that identified the defendants as having assumed important obligations, including the obligation to coordinate and transmit payments to providers like Dr. Meinders. The district court focused on that in its decision. Would you agree, Ms. Ellsworth, that the district court's decision depended upon that affidavit? Yes, I believe that's correct, Your Honor. To which plaintiff had no opportunity to respond. He did not have an opportunity to respond, which is always the case when there are reply briefs. It's extraordinary to have such a novel theory introduced with new evidence in a reply brief. District courts have a lot of discretion over the way they handle such things, but I'm not sure that discretion extends to foreclosing opportunities to respond. And we've heard a statement today about factual questions that plaintiff would like to get into, which he had no opportunity to get into. Why don't we have to remand here? Well, if I could take that question one step at a time, the jurisdictional type discovery that Dr. Meinders has referred to in his conversation with you, Your Honor, is not something that parties get simply by saying, hey, we'd like to go ask someone some questions. Well, this affidavit is about as vague and conclusory as I've ever seen on this question of assumption. By the way, is your theory that United now is fully a party to all of the obligations of ACN, so that if ACN defaulted, United is liable under the contract? Our theory is that if there was a situation where, for example, Dr. Meinders was disputing whether he was being paid appropriately under the contract, he could take both ACN and the United defendants to arbitration to resolve that. That is very similar to what you're saying. That's not my question. My question is, is United liable under the contract? United has assumed obligations, and with the assumption of obligations comes a potential for liability. I'm looking for a yes, and you're not giving it to me. It would be extraordinary for a parent company to volunteer to assume all obligations of its subsidiary when it's not required to. That's the reason you have different corporations. And I think that's why I'm resisting your question to some degree, because without knowing what the obligation is that you're suggesting would be breached, it is hard to say whether United would be liable. So how do we know whether United has assumed whatever is relevant here with respect that would let them take advantage of the arbitration clause? We know that because the one thing that Ms. Van Ham's declaration does make clear is that one of the obligations that has been assumed is the obligation to, and I'm quoting, coordinate and transmit payments to providers, such as the plaintiff in this lawsuit. This fax that he received was about coordinating and transmitting payment to providers. You're telling us that's why United sent it, right? I think that's readily apparent from the face of the fax. How do we know it's not simply an invitation to become a member? Look, we've got these great new services we can provide to our members. How do we know it wasn't sent for that reason? The fax begins by saying, get paid faster and easier with online member payments. And if you read the text of the fax, it explains how to log on as a member, which Dr. Minders would be a member because he's in their provider directory, and it explains how he can take advantage of this specific technology to get payments transmitted to him faster. That is the obligation that Ms. Van Ham's declaration identified as the one that was assumed by United. And as I think Your Honor's question highlights, companies don't lightly assume obligations. Well, and in fact, in this case, would you agree that, in essence, an assuming party is one that has been delegated duties by a party to the contract? Assumption and delegation are opposite sides of the same coin. Yes, I think that's correct in one sense. There are two different types of delegation. I think there are delegations where someone is actually handing responsibility over entirely to another party. That's an ovation if they're no longer a party to the contract. Correct, and those are circumstances in which notice and consent all become relevant. So why does this contract say no delegation without notice and consent, and how do you get around that? The no delegation language that you're referring to is an anti-assignment provision. The anti-assignment provision speaks specifically to this sort of situation like an ovation where ACN would be essentially handing the contract over to someone else. How do you get that? I understand why that's convenient for your position, but this is written very broadly. All rights and responsibilities under the agreement cannot be sold, leased, assigned, or otherwise delegated. I think under eustem generis and similar canons of interpretation, you look at the word delegation in the context in which it's used in this provision. The types of scenarios that this provision addresses are sales, leases, assignments, things like novation where ACN would be turning its responsibility. Assignments don't necessarily amount to novation. Assignments often do. They can, yes, but not always. For example, if I could refer to the case that we submitted in our 28J letter, the Anderman case that was decided last week by this court, the situation involved U.S. Cellular assigning a contract for cellular phone service to Sprint. There was no prohibition on that, was there? There was not. I assume you guys wrote this, right? That's not in the record, but I assume that to be true, Your Honor. So how do you get to delegate and assume without this? The type of delegation that happens with an assumption is different from the type of delegation. I think the Farnsworth Treatise that we cited in Section 11.11 spells out the difference in those two types of situations, and it explains it. Right, but how do we tell the difference here? Because among other things, what you're telling me, I thought, was that United has completely taken over this contract, that it's liable for everything, right? Well, I said it's liable for the obligations that it has assumed, which we know to include coordinating and transmitting payments. I don't see how we can possibly then resolve this issue on the strength of Van Damme's affidavit, for which there was no opportunity to respond. Van Damme, sorry. Your Honor, I would suggest that the frenetics case is the main case from this court that deals with assumption. The frenetics case involves a dispute. It found no assumption, right? It did find no assumption because there was a clearly erroneous factual finding made by the district court involving who had made certain payments, which entity had made payments. The court did not suggest that there was a problem with assumption applying if there was an assumed obligation to make payments. But you're talking about an implied assumption, right? In this case or in frenetics? Yes, in this case. I think there is an implied assumption that, in fact, became expressed through Ms. Van Damme's declaration to the court. Long after the fact. And there's no indication that plaintiff accepted the assumption. I mean, there's none of that. This is really an extraordinary theory that you all tried to push. Do you have a case in which somebody, an assuming party, was allowed to enforce an arbitration agreement? Assumption is a much less developed doctrine. It sure is. This court noted in its Everett decision from last November when it decided on a direct benefits estoppel theory and declined to reach the assumption argument in that case. There are very few cases that address it, although there are many cases that say assumption is one of the contract principles through which a non-signatory. Absolutely. I think everybody agrees to it. The question is whether you've got it. And here we've got a fragment of a sentence in an affidavit on a reply brief that provides no details at all to try to impose. I'm not sure that I have it. I'll just say, Your Honor, to the extent the court is concerned about that, what the frenetics court did in a similar situation was to remand for further analysis of those facts at the district court level. Thank you very much, Your Honor. Thank you, counsel. Mr. Bach. Just one thing in rebuttal. The defendant's argument that it doesn't matter that we didn't get the respond to the affidavit below because we can respond here, to me sounds like this court can deny the motion to compel arbitration with prejudice on its own and then remand the case just to proceed because they don't have any, there's no evidence that this fact arises out or relates to the provider agreement, so the arbitration clause doesn't apply. There's no evidence showing a legal assumption and there's no evidence showing acquiescence by the plaintiff. So if it's okay to be here and make those arguments now, then it's okay, I guess, for this court to resolve them now and we don't have to go back and do the same thing in front of the district court and then possibly come back here because somebody gets to appeal the result of an arbitration motion anyway. So we would just have another appeal next year from one of the two parties. Thank you. Thank you, Mr. Bach. Thank you, Ms. Ellsworth. The case is taken under advisory.